* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and, upon reconsideration, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. At all times relevant to these claims, an employer/employee relationship existed between Anthony Pulley and the City of Wilson.
3. The employer is self-insured.
4. Plaintiff's average weekly wage was seven hundred ninety-five dollars and fourteen cents ($795.14), resulting in a weekly compensation rate of five hundred thirty dollars and nine cents ($530.09).
5. Plaintiff alleges an injury to his upper back and neck arising from a specific traumatic incident that occurred during a training exercise on April 29, 2004; and a further injury to his upper back and neck on November 29, 2004, arising from a specific traumatic incident that occurred during a self-imposed practice of the physical test he was required to pass to return to full duty.
6. Defendant has denied these claims and Mr. Pulley has received no payments from defendant for temporary total or partial disability or medical benefits at any time.
7. The parties also stipulated the following documents into evidence:
 a. Stipulated Exhibit 1 (the actual stickers are designated Plaintiff's Exhibits 1 through 9 and 11 through 14) as follows: Exhibit No. 1 a supervisor's accident/incident report; Exhibit No. 2 is City of Wilson wellness program notes; Exhibit No. 3 City of Wilson OSHA respirator medical evaluation questionnaire; Exhibit No. 4 a City of Wilson workers' compensation notes; Exhibit No. 5 are treatment records from Dr. Kent Anderson; Exhibit No. 6 are treatment records from Dr. Gerald Vanden Bosch; Exhibit No. 7 are treatment records from Dr. Ira Hardy, II; Exhibit No. 8 are records from Dr. Robert E. Price, Jr.; Exhibit No. 9 are records from *Page 3 
Comprehensive Rehab of Wilson; Exhibit No. 11 is the Wilson Fire and Rescue physical ability testing policy; Exhibit No. 12 is a supervisor's accident/incident report dated; Exhibit No. 13 is a letter from Tony Pulley to Chief Parker; and Exhibit No. 14 is a memo from Anthony Pulley to Fire Chief Oliver.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one (51) years old. He did not graduate from high school, but did obtain a GED. Plaintiff worked as a firefighter with the Wilson Fire Department for approximately twenty-two (22) years. Other than seminars or courses on firefighting, plaintiff had no additional formal education.
2. On April 29, 2004, plaintiff alleges he was injured during a hazardous material training exercise when he picked up a mannequin weighing approximately one hundred seventy-five (175) pounds to put into a basket. Plaintiff testified that while lifting the mannequin, he felt a great deal of pain in his neck, going down into his left shoulder, arm and hand. Plaintiff was wearing his self-contained breathing apparatus (SCBA) at the time. Plaintiff finished the training exercise, cleaned up and went back to the station. Plaintiff told his captain, Chris Hines, that he needed to go home due to the amount of pain he was experiencing. However, because of a working house fire that occurred tying up the other engine companies, plaintiff decided to stay at work and complete his shift. *Page 4 
3. Prior to April 29, 2004, plaintiff had a history of neck and back problems. He was treated for ongoing neck problems in 2000 for which he was taking Vioxx. Only a few days after April 29, 2004, the City's wellness progress notes include an entry on May 5, 2004 indicating plaintiff was reevaluated for taking Vioxx in relation to pain in his neck.
4. On April 30, 2004, plaintiff presented to Dr. Kent Anderson and reported he was still having neck pain, that he had seen Dr. Vanden Bosch and had attended physical therapy, but was still in pain especially when he wore his air pack as a fireman.
5. Consequently, an MRI and other diagnostic studies were ordered, including a myelogram with a post-myelogram CT scan. The MRI revealed C5-6 and C6-7 degenerative changes with prominent disc bulges causing some degree of stenosis. The results of the myelogram showed plaintiff had bulging discs, both C5-6 and C6-7, with no evidence of spinal cord distortion or significant stenosis. However, plaintiff did have nerve root defects at both levels on the left side.
6. Dr. Anderson referred plaintiff to Dr. Ian Hardy, a board certified neurosurgeon. On July 1, 2004, plaintiff underwent left C5-6 and C6-7 laminotomies, partial facetectomies and foraminotomies. Dr. Hardy testified that plaintiff did well postoperatively. Plaintiff's arm pain improved, the weakness in his hand cleared up, and his reflexes remained intact.
7. Dr. Hardy opined that plaintiff's problems were of a degenerative nature versus a traumatic nature. He testified that there were hard discs; no soft discs present and he did not think an acute injury would have produced this sort of thing.
8. Plaintiff began light duty with defendant around the second week in September 2004. *Page 5 
9. When a firefighter has been out of work for an extended period, the Wilson Fire Department requires the firefighter to pass a physical ability test, also known as the "combat challenge." As the end of November 2004 approached, plaintiff had concerns as to whether he was physically able to resume full duties as a firefighter. Therefore, plaintiff requested permission from Battalion Commander Aycock, Deputy Chief Parker, and Deputy Chief Godwin to complete a walkthrough of the combat challenge. All of the supervisors agreed plaintiff should do this and gave their permission.
10. On November 29, 2004, plaintiff went to the training tower to walk through the combat challenge. He put on his full turnout gear, including his air pack. The gear weighed approximately 60-70 pounds. At that point, plaintiff felt some discomfort in his neck, left shoulder, arm and hand. He walked around for a bit and decided to proceed with the test.
12. The first part of the combat challenge requires that a firefighter climb five stories of the fire tower with a hose pack or high rise pack weighing 50-55 pounds. Plaintiff picked up his hose pack, placed it on his right shoulder and started climbing the stairs of the tower. At that point, plaintiff began experiencing a significant level of pain in his neck, radiating down into his left shoulder, arm and hand. As a result of the pain, plaintiff had to stop his attempt to complete the walkthrough.
13. Plaintiff testified that the pain he experienced following his attempt to walk through the combat challenge was essentially like the pain that he had in his neck and left shoulder, arm and hand prior to his surgery in July. He further testified that his pain remained at a more intense level following his attempt to walk through the combat challenge.
14. Plaintiff testified that a day or two following his attempt to walk through the combat challenge, he informed his supervisors that he had problems during his attempt at the combat challenge. *Page 6 
15. Commander Aycock confirmed that the day after plaintiff's walkthrough attempt, plaintiff told him that he got about half way up the tower with the hose pack and felt such pain in his neck and shoulder that he could not finish.
16. Chief Godwin similarly testified that plaintiff told him that as he tried the walkthrough, his pain increased and therefore he stopped.
17. Plaintiff was referred to neurosurgeon, Dr. Robert Price, Jr. Plaintiff saw Dr. Price for the first time on December 20, 2004. At this visit, plaintiff reported to Dr. Price that he attempted the physical ability test he was required to take as a firefighter, but could not complete the test because he experienced severe difficulty with pain in his neck and shoulder. The impression was difficulty with chronic neck pain post surgery. Dr. Price doubted plaintiff had a recurrent disc condition. Dr. Price recommended that plaintiff have cervical spine films with flexion/extension views and a cervical MRI scan with or without contrast.
18. The cervical spine films done on December 22, 2004 showed degenerative disc changes at C5-6 and C6-7, no evidence of sublaxation on flexion or extension views. The MRI scan, also done on December 22, 2004, showed there was some persistent abnormal disc osteophytes present on the left at C5-6 and C6-7 associated with some mass effect on the left at C5-6; mild extradural deformity of the cervical cord at C5-6 antelaterally.
19. As a result his treatment and evaluation of plaintiff, Dr. Price concluded that plaintiff was unable to work fulltime as a firefighter. Therefore, plaintiff retired from the fire service. His last day of work with the Wilson Fire Department was March 31, 2005. *Page 7 
20. Dr. Price testified to a reasonable degree of medical certainty that the activity plaintiff engaged in by trying to walk through the physical ability test significantly aggravated or caused the neck and arm pain and problems for which he treated plaintiff.
21. Based on a view of the evidence as a whole, the Full Commission finds as fact that plaintiff did not suffer a specific traumatic incident on April 29, 2004.
22. Based on a view of the evidence as a whole, the Full Commission further finds that plaintiff did suffer a specific traumatic incident on November 29, 2004. As a result of the specific traumatic incident, plaintiff suffered an aggravation of his preexisting neck condition.
23. As it is required that a firefighter who has been out of work for an extended period of time pass the physical ability test and plaintiff sought and obtained permission to complete a walk through of the test from three supervisors, the Full Commission finds that the specific traumatic incident suffered by plaintiff on November 29, 2004 arose out of and in the course of his employment with defendant.
24. Before his employment with the Wilson Fire Department, plaintiff performed jobs in the construction industry. The Full Commission finds that plaintiff is capable of some work, but as a result of his ongoing physical problems arising from his neck injury, plaintiff is unable to perform any of the work which he previously performed.
25. Plaintiff has actively looked for employment since his retirement. He has regularly reviewed the Help Wanted ads from the local newspaper and made follow-up calls to several of the jobs listed in those ads. He has also reviewed the job listings available through the Employment Security Commission for the Wilson area. The greater weight of the evidence establishes that plaintiff has made reasonable efforts to find suitable employment, but has been unsuccessful in his efforts to locate suitable employment. *Page 8 
26. The medical treatment provided and prescribed for plaintiff for his neck condition by Dr. Anderson and Dr. Price on or after November 29, 2004 was reasonable and necessary treatment to effect a cure and relieve the symptoms he experienced.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000);Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980). Plaintiff has failed to prove by the greater weight of the competent evidence that on April 29, 2004, he sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. On November 29, 2004, plaintiff suffered a specific traumatic incident arising out of and in the course of his employment with defendant, which aggravated his preexisting neck condition. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is capable of some work, but after a reasonable effort, has been unsuccessful in his efforts to obtain employment. Russell v.Lowe's Products Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of his specific traumatic incident on November 29, 2004, plaintiff is entitled to receive temporary total disability compensation at a rate of $530.09 per week *Page 9 
beginning April 1, 2005 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his November 29, 2004 compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff temporary disability compensation at a rate of $530.09 per week beginning April 1, 2005 and continuing until further order of the Commission. The part of this compensation that has accrued shall be paid in a lump sum.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as a result of his compensable specific traumatic incident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. An attorney's fee in the amount of 25% is approved for the plaintiff's counsel, which shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the 25th day of February, 2008. *Page 10 
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1